## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| N.A., a minor,<br>by his parents and next friends,<br>Harold and Claudia Alderman,<br>3503 34th Street, NW,<br>Washington, D.C. 20008,<br><br>and<br><br>HAROLD AND CLAUDIA ALDERMAN,<br>3503 34TH Street, NW,<br>Washington, D.C. 20008,<br><br>       Plaintiffs,<br><br>       v.<br><br>DISTRICT OF COLUMBIA,<br>A Municipal Corporation,<br>One Judiciary Square,<br>441 Fourth Street, NW,<br>Washington, D.C. 20001,<br><br>and<br><br>ADRIAN M. FENTY, (officially as)<br>Mayor of the District of Columbia,<br><br>John A. Wilson Building,<br>1350 Pennsylvania Avenue, NW,<br>Washington, DC 20004,<br><br>and<br><br>MICHELLE A. RHEE, (officially as)<br>Chancellor,<br>District of Columbia Public Schools,<br>825 North Capitol Street, NE,<br>Washington, D.C. 20002,<br><br>       Defendants. | **Civil Action No.** _____ |

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## Preliminary Statement

1.  This is an action for reimbursement of the costs incurred by plaintiffs Harold and Claudia Alderman ("the parents" or collectively as "the Alderman family"), in educating their son, N.A., in a private school for disabled children after the District of Columbia Public Schools ("DCPS") failed to provide him with a free appropriate public education ("FAPE") as required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487.

## Jurisdiction

2.  This Court has jurisdiction over this matter pursuant to the IDEA; 42 U.S.C. § 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. Plaintiffs have exhausted their administrative remedies and appeal to this Court from a decision of an Independent Hearing Officer of the District of Columbia Public Schools Student Hearing Office.

## Parties

3.  N.A. is a disabled child, as defined by the IDEA, eligible to receive special education and related services. At all times relevant to this action, this student and his parents resided in the District of Columbia. The parents bring this action on N.A.'s behalf and in their own right.

4.  The District of Columbia is a municipal corporation that receives federal financial assistance and is required to comply with the IDEA.

5. Adrian M. Fenty is the Mayor of the District of Columbia. As of June 12, 2007, he has authority over DCPS pursuant to the Public Education Reform Amendment Act of 2007, Law 17-9, Act 17-38. As such, he has authority over all operations and functions of DCPS, which includes ensuring that DCPS complies with District and federal law as to the education of disabled children, and ensuring that all disabled children in the District of Columbia receive a FAPE and that their rights to equal protection of the law and due process of law are respected. He is sued in his official capacity.

6. Michelle A. Rhee is the Chancellor of DCPS. She serves at the pleasure of the Mayor and is the public official charged with the responsibility for ensuring that DCPS complies with District and federal law as to the education of disabled children, and ensuring that all disabled children in the District of Columbia receive a FAPE and that their rights to equal protection of the law and due process of law are respected. She is sued in her official capacity.

**Factual Allegations**

7. N.A. is a twelve-year-old child who has been diagnosed with Asperger's Syndrome, Attention-Deficit/Hyperactivity Disorder ("ADHD"), a Receptive Language Disorder, a Disorder of Written Output, a Mood Regulation Disorder, Oppositional Defiant Disorder, and difficulties with sensory processing and modulating sensory output.

8. DCPS has assigned N.A. a disability code of "Multiple Disabilities." With this code, N.A. is eligible to receive special education and related services under an Individualized Education Program ("IEP").

9. N.A.'s multiple disabilities were recognized and diagnosed by first grade, with DCPS placing and funding him at Kingsbury Day School ("Kingsbury") for second and third

grades. However, Kingsbury could not manage the disruptive behaviors resulting from N.A.'s disabilities and told his family that he could not come back for the 2004-05 school year.

10. After N.A. left Kingsbury, neither the Aldermans nor DCPS could find an appropriate public or private placement for him. DCPS therefore placed and funded N.A. in a home-school program designed and implemented by his mother for the 2004-05 and 2005-06 school years.

11. During the 2005-06 school year, Mrs. Alderman looked for schools that could appropriately educate her son. N.A. was performing at or above grade level academically in his home instruction, but his parents wanted him to move out of home instruction and have more opportunities for social interaction by learning in a school setting with his peers.

12. When she was unable to find an appropriate school setting in the Washington, D.C. metropolitan area, Mrs. Alderman and another parent of a child with Asperger's Syndrome approached the Ivymount School, a private school for disabled children in Montgomery County, Maryland, about the possibility of organizing a program for children with Asperger's at Ivymount that would be similar to programs Mrs. Alderman had researched in the New York City metropolitan area. After consulting school staff as well as outside psychiatrists, psychologists and teachers, the Board of Directors of the Ivymount School authorized the Ivymount School Model Asperger's Program. Eligible children, including N.A., would be able to enroll in the program at the beginning of the 2006-07 school year.

13. On July 21, 2006, the Aldermans, through counsel, sent a letter to DCPS requesting a Multi-Disciplinary Team ("MDT") meeting to consider and approve placement for N.A. in the new Asperger's Program at the Ivymount School. The letter specifically put DCPS

on notice that the Aldermans planned to change N.A.'s placement from home-schooling to Ivymount, and specifically requested that DCPS support N.A.'s placement at Ivymount.

14. In the Fall of 2006, N.A. began attending the new Asperger's Program at Ivymount. DCPS had not yet convened an MDT meeting nor responded in any other way to the Aldermans' letter of July 21.

15. DCPS finally convened an IEP meeting for N.A. on October 10, 2006. However, no placement was discussed during this meeting and the Aldermans were asked to return for a follow-up meeting.

16. The follow-up IEP meeting was held on November 13, 2006. The IEP team, which included Mrs. Alderman and representatives from Ivymount in addition to DCPS personnel, finalized N.A.'s IEP. The team determined that N.A. required placement 100% outside of a general education setting. Again, however, no placement decision was reached. Angel Hinton, the DCPS case manager, informed Mrs. Alderman that N.A.'s package would be sent to a site review committee to determine placement. The Aldermans were not allowed to speak to the committee making the placement decision. Ms. Hinton told Mrs. Alderman that she would hear back from the committee in a week or two with the placement decision.

17. One month later, on December 13, 2006, the Aldermans still had not heard back from DCPS regarding N.A.'s placement. Counsel for the Aldermans sent a letter to DCPS on this date to inquire about the status of N.A.'s placement and renew the Aldermans' objection to the placement decision being made without their participation. In this letter, the Aldermans again gave DCPS notice that they were requesting placement at Ivymount. DCPS did not respond to this letter.

18.     On January 23, 2007, six months after the Aldermans first requested a change in placement, Mrs. Alderman attended another meeting with DCPS and was informed of the site review committee's placement decision. The committee had decided to place N.A. in an autism classroom at Ludlow-Taylor Elementary School in Northeast D.C.

19.     During the meeting, Mrs. Alderman spoke with a psychologist from Ludlow-Taylor and asked questions about the autism class. She determined that it was not an appropriate placement, and again asked the team gathered at the meeting to consider Ivymount. She was informed that the IEP team could not make placement decisions, that neither she nor the IEP team could speak with anyone on the site review committee, and that the IEP team was not authorized to consider private placements even when no appropriate public placement was available.

20.     Mrs. Alderman later visited the autism class at Ludlow-Taylor. She learned that the program ended at sixth grade. Since N.A. was already in sixth grade, this meant that he would only be able to attend the autism class at Ludlow-Taylor for the four and a half months remaining in the 2006-07 school year, and would then have to go back to DCPS and begin the placement process again. She also learned that all of the students in the class performed well below her son's level. Whereas N.A. was performing at or above grade level in academics at Ivymount, as he had during home-schooling, the students at Ludlow-Taylor were performing well below grade level. Two of the students in the class were non-verbal, low-functioning autistic students, and three of the students were mentally retarded. None of the children had Asperger's Syndrome. Mrs. Alderman continued to believe that this placement would be highly inappropriate for N.A..

21. Although N.A.'s transition from home-schooling to Ivymount was long and difficult, he has made great progress at Ivymount and continues to succeed both academically and socially. He continues to perform at or above grade level academically.

22. On January 26, 2007, the Aldermans filed a due process hearing request alleging that DCPS denied N.A. a Free and Appropriate Education (FAPE) by delaying the IEP process, refusing to allow the parents to participate in the placement decision, and failing to offer an appropriate placement. They further alleged that Ludlow-Taylor was not an appropriate placement and that the Asperger's Program at Ivymount was a proper placement for N.A.

23. Under federal and D.C. law, DCPS was obligated to convene a due process hearing within thirty-five days of the parents' request, or by March 16, 2007.

24. A due process hearing was not convened until April 17, 2007, before Impartial Hearing Officer H. St. Clair, Esq.

25. At the hearing, Mrs. Alderman testified to her son's disabilities, his academic history and the progress he had made at Ivymount. She also testified as to the extremely delayed IEP process of the 2006-07 school year. The Program Director of the Model Asperger's Program at Ivymount School testified about the program and how it serves the needs of disabled yet high-performing children with Asperger's. The Director explained that N.A. was at grade level academically and that he could continue on in the Asperger's Program at Ivymount through the high school curriculum and would continue to receive educational benefit.

26. The DCPS case manager testified at the hearing that she could not remember receiving the July 21, 2006 letter requesting placement at Ivymount. The school psychologist for

Ludlow-Taylor testified that, as Mrs. Alderman had observed, all of the students in the autism class at Ludlow-Taylor were academically low-performing and did not have Asperger's.

27. On April 30, 2007, Hearing Officer St. Clair issued a final administrative decision. He concluded that the decision-making process employed by DCPS in this case, and particularly denying the parents the right to participate in the placement of the student, constituted a denial of FAPE. He further found that the autism program at Ludlow-Taylor Elementary School was not an appropriate placement for N.A. and that the placement constituted a denial of FAPE. He also found that N.A. could receive educational benefit at Ivymount and ordered DCPS to place and fund him at Ivymount for the remainder of the 2006-07 school year. However, he improperly denied the parents' request for reimbursement for the time N.A. had already spent at Ivymount. This time includes nearly the entire 2006-07 school year, before and during which the Aldermans repeatedly tried to get N.A. an appropriate placement through DCPS. The Hearing Officer's reason for not reimbursing the first part of the school year at Ivymount was that the record did not show that the parents informed DCPS that they expected reimbursement for this time, as required by federal law.

28. At no time prior to or during the hearing did DCPS argue that there had been an absence of notice regarding the parents' expectation of reimbursement for the entire 2006-07 school year.

29. The Aldermans did in fact give DCPS written notice, in July of 2006, of their intent to place N.A. at Ivymount for the entire 2006-07 school year and request for the support of the school system at that time. They provided written notice a second time on December 13,

2006, when they again wrote DCPS requesting placement for N.A. They verbally stated their request for placement at Ivymount at the October, November and January IEP meetings.

30. The Aldermans complied with all federal and local law to the best of their abilities. Only the repeated delays of DCPS caused the issue in this case.

31. The Hearing Officer misinterpreted and misapplied federal and D.C. statutory law by concluding that the Aldermans are not entitled to full reimbursement.

32. The Hearing Officer abused his discretion by failing to award full reimbursement for the 2006-07 school year to the Aldermans, when no binding legal authority barred him from doing so, and the facts in the record fully supported the claim.

33. The Hearing Officer's decision not to award full reimbursement to the Aldermans for the entire 2006-07 school year at Ivymount was arbitrary and capricious.

34. The Hearing Officer directly contradicted his own findings by first finding that the Aldermans requested that DCPS place N.A. at Ivymount in July, but later finding that they never informed DCPS of their expectation for reimbursement.

35. On May 2, 2007, the Aldermans timely filed a motion for reconsideration of Finding of Fact 8 and Conclusion of Law III of the Hearing Officer's April 30, 2007 decision. Finding of Fact 8 states that the parents did not inform DCPS of their expectation for reimbursement, and Conclusion of Law III denies the reimbursement.

36. After timely filing the motion for reconsideration, the parents have repeatedly inquired of the Student Hearing Office as to a ruling on that motion. No opposition was filed by DCPS, but the Hearing Officer has never ruled on the motion.

37. Plaintiffs are aggrieved by Finding of Fact 8 and Conclusion of Law III of the decision of the Hearing Officer.

38. Plaintiffs have exhausted their administrative remedies.

## COUNT I

(Erroneous Denial of Full Reimbursement)

39. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 38 above.

40. Federal and D.C. law requires that a school system that fails to provide a student with a FAPE must place and fund that student in a private placement that can provide that student with educational benefit.

41. The Hearing Officer correctly found that DCPS failed to provide N.A. with a FAPE and correctly ordered DCPS to place and fund him at Ivymount. However, he then erred in refusing to grant the Aldermans the full reimbursement for the 2006-07 school year to which they are entitled.

42. The Aldermans gave proper notice of their intent to seek a new placement for N.A. prior to the 2006-07 school year and on several subsequent occasions; all delays in the IEP process were caused by DCPS. The Aldermans should not be punished for the failure of DCPS to timely determine a placement.

43. The Hearing Officer committed error, and violated plaintiffs' due process rights under the IDEA and D.C. law, by failing to order DCPS to provide reimbursement for N.A.'s placement at Ivymount for the entire 2006-07 school year.

WHEREFORE, plaintiffs respectfully request that this Court:

1. Issue declaratory relief that the Aldermans are entitled to reimbursement from DCPS for N.A.'s entire 2006-07 school year at Ivymount;

2. Order the defendants to reimburse plaintiffs for N.A.'s entire 2006-07 school year at Ivymount;

3. Order defendants to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

4. Award any other relief that this Court deems just.

Respectfully submitted,

_____
Michael J. Eig            #912733

_____
MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740
Counsel for Plaintiffs

_____
Matthew B. Bogin          #911552

_____
77 South Washington Street
First Floor
Rockville, Maryland 20850
(301) 233-1028
Counsel for Plaintiffs

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Nathaniel Alderman, et al.

## DEFENDANTS
District of Columbia, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  D.C.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  D.C.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Michael J. Eig & Associates, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01355
Assigned To : Leon, Richard J.
Assign. Date : 7/25/2007
Description: Civil Rights-Non Employ.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ⊙ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
20 U.S.C. secs. 1400, et seq.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 7.25.07    SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.